UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. 07-1854 JMR/AJB

MICHAEL J. DAHLIN,

Plaintiff,

v.                                    **REPORT AND RECOMMENDATION**

ERIK SKON, et al,

Defendants.

_____

ARTHUR J. BOYLAN, United States Magistrate Judge.

This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Plaintiff's motion for preliminary injunctive relief, and on defendants' motions for summary judgment.[1] At the time the complaint was filed, Plaintiff was an inmate at Minnesota Correctional Facility ("MCF")-Rush City. Plaintiff has since been transferred to MCF-Oak Park Heights. Defendants Skon, Ebeling, Larson, Feneis, Walker, and Barger are employees of MCF-Rush City.[2] Defendants Dr. Keith Krueger, and Dr. Purisimo Lucas are independent contractor physicians hired by Correctional Medical Services, Inc. to provide medical services to Minnesota Correctional Facilities. All defendants are sued in their

_____

[1] All defendants, except Darin Haugland, have moved for summary judgment. Defendant Haugland has not yet been served.

[2] Erik Skon is the Assistant Commissioner of Corrections for the Minnesota Department of Corrections ("MN DOC"). Kim Ebeling is the Grievance Appeal Coordinator for the MN DOC. Nanette Larson is an Appeal Response Person for the MN DOC. Robert Feneis is the Warden at MCF-Rush City. Beth Walker is the Grievance Coordinator at MCF-Rush City. Denise Barger is the Health Services Supervisor at MCF-Rush City.

official and individual capacities.

The complaint is brought pursuant to 42 U.S.C. § 1983 and asserts violations of the Eighth Amendment of the United States Constitution, as applied to the States by the Fourteenth Amendment. The claims relate to plaintiff's requests for treatment of chronic pain associated with spinal stenosis, and his requests for psychiatric care. Plaintiff seeks preliminary injunctive relief for defendants to provide Plaintiff with "effective pain medication and sleep medication." (Motion for Preliminary Injunction, Docket No. 15.) Plaintiff seeks remedies of injunctive relief for defendants to provide Plaintiff with outside medical care for severe pain and all underlying related medical issues, and for defendants to provide him a job within his abilities, or to give him "the same amount of privileges and programming opportunities as an inmate worker receives." (Complaint, Docket No. 1.) Plaintiff seeks compensatory damages for "future related treatment costs." Id. Plaintiff also seeks punitive damages of $100,000.00 against each defendant. Id.

Defendants Skon, Ebeling, Larson, Feneis, Walker and Barger move to dismiss or for summary judgment based upon failure to exhaust administrative remedies, and upon their contentions that claims against them in their official capacities are barred by the Eleventh Amendment, and that they did not violate Plaintiff's Eighth Amendment rights and are entitled to qualified immunity. Defendants Krueger and Lucas move for summary judgment based upon their contentions that Plaintiff has failed to establish that they were deliberately indifferent to his serious medical needs. Defendants Krueger and Lucas object to Plaintiff's argument that their motion is untimely, and assert that Plaintiff failed to provide sworn affidavits with competent evidence to support his allegations. (Reply Memorandum of Law in Support of Motion for Summary Judgment of Defendants Keith Krueger, M.D., and Purisimo Lucas,

2

M.D., Docket No. 56).  Therefore, they ask the Court to disregard Plaintiff's personal opinions and unsupported allegations and grant summary judgment.  Id.

Plaintiff Michael Dahlin is proceeding pro se.  Defendants Skon, Ebeling, Larson, Feneis, Walker and Barger are represented by Margaret Jacot,  Assistant Minnesota Attorney General. Defendants Lucas and Krueger are represented by Charles A. Gross, Esq.  The action has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. 636 and Local Rule 72.1.  For reasons discussed below the Court recommends that Plaintiff's Motion for Preliminary Injunctive Relief be denied [Docket No. 15]; Defendants Skon, Ebeling, Larson, Feneis, Walker, and Barger's Motion for Summary Judgment be granted [Docket No. 31]; Defendants Krueger and Lucas' Motion for Summary Judgment be granted [Docket No. 44]; and the claims against Defendants Skon, Ebeling, Larson, Feneis, Walker, Barger, Krueger and Lucas be dismissed with prejudice.

## I.    Allegations in the Complaint

Plaintiff alleges each Defendant, in his or her official and individual capacities, was deliberately indifferent to Plaintiff's needs and inflicted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.  Specifically, Plaintiff alleges Defendant Skon is the Assistant Commissioner of the Department of Corrections who is legally responsible for the operation of each Minnesota Department of Corrections ("MN DOC") facility, including MCF-Rush City. Plaintiff alleges his wife wrote a letter to Defendant Skon, on or around March 2006, and advised him that Plaintiff was in severe pain and was not receiving proper medical treatment.  He alleges Defendant Skon was deliberately indifferent to his serious medical needs by having the same staff about whom

Plaintiff complained respond to Plaintiff's needs. Plaintiff alleges this conduct violated his rights under the Eighth Amendment.

Plaintiff alleges Defendant Kim Ebeling, the Grievance Appeal Coordinator at the MN DOC Central office, received his grievance appeal on July 21, 2006, alleging medical staff were deliberately indifferent to his constant severe pain. Plaintiff alleges Defendant Ebeling was aware of his severe pain and did nothing to stop it during the twenty-one days his appeal was being investigated. Plaintiff also alleges he filed a grievance appeal with Defendant Ebeling on February 17, 2007, alleging his kites requesting psychiatric help for severe depression and insomnia were being ignored. Plaintiff alleges Defendant Ebeling was deliberately indifferent to his medical needs because she denied his appeal for failing to attach copies of papers showing that he had received a formal grievance response from the facility. Plaintiff alleges Defendant Ebeling was aware he could not complete the grievance procedure because Plaintiff's kites were not returned, therefore, he could not show he tried to resolve his issues informally.

Plaintiff alleges Nanette Larson, the Appeal Response Person for the MN DOC Central Office, failed to provide Plaintiff relief as requested in his grievance appeal dated August 9, 2006, and although she affirmed his appeal in part, she did nothing to follow up. Plaintiff alleges Defendant Larson knew Dr. Lucas was treating him ineffectively, and her failure to provide relief caused him to suffer excruciating pain for months.

Plaintiff alleges on May 12, 2006, he filed a grievance with Defendant Robert Feneis, the Warden of MCF-Rush City, detailing his serious medical concerns, and stating that Dr. Lucas and Denise Barger refused to help him. He alleges Defendant Feneis was deliberately indifferent to his

severe pain because he dismissed Plaintiff's grievance two months after it was filed, and the delay in responding constitutes cruel and unusual punishment in violation of the Eighth Amendment.

Plaintiff alleges Beth Walker, the Grievance Coordinator at MCF-Rush City, blocked his attempts to access the inmate grievance process by not filing his grievance of May 12, 2006 until June 20, 2006, although his grievance described his severe pain. He further alleges that he filed a grievance on January 20, 2007, alleging no one would respond to his kites asking to see a psychiatrist. Plaintiff alleges Ms. Walker's response was to reject the grievance because he did not attach the kites showing he tried to resolve the issues informally. Plaintiff replied to Ms. Walker that his grievance was related to the failure of staff to return his kites. He alleges Ms. Walker's response was to tell him to follow the chain of command. Plaintiff argues Defendant Walker's conduct was a blatant disregard of his pain and suffering and constitutes cruel and unusual punishment under the Eighth Amendment.

Plaintiff alleges Denise Barger, the Health Services Supervisor at MCF-Rush City, exhibited deliberate indifference to his severe medical needs by failing to coordinate effective treatment for pain relief when he asked for help in dozens of kites between April 13, 2006 and January 3, 2007.

Plaintiff alleges Defendant Dr. Krueger first examined him for back pain and leg spasms while Plaintiff was incarcerated at MCF-St. Cloud on December 21, 2005, but Dr. Krueger did nothing to help him. Plaintiff alleges that he told Dr. Krueger on January 13, 2006 that he was in constant pain, and Dr. Krueger's response was to review his medical records and see him again in a couple of weeks. Plaintiff alleges when he saw Dr. Krueger again on February 10, 2006 for severe back pain and leg spasms, Dr. Krueger's response was to continue Plaintiff's same medication and to review Plaintiff's case in a couple of weeks. Plaintiff alleges Dr. Krueger was deliberately indifferent to his serious

medical needs and his conduct violated Plaintiff's rights under the Eighth Amendment.

Plaintiff alleges Dr. Lucas was his treating doctor at MCF-Rush City.  He alleges Dr. Lucas continuously ignored his complaints of severe and constant pain, occasional loss of bladder control, insomnia, numbness, and inability to perform routine daily activities.  He alleges Dr. Lucas repeatedly prescribed medications and treatment that were ineffective and that Dr. Lucas' conduct violated his rights under the Eighth Amendment.

Plaintiff advised the Court that he was transferred to MCF-Oak Park Heights.  In a letter to the Court dated May 24, 2007, Plaintiff argues his motion for preliminary injunctive relief is not moot because his preliminary injunction request asks the Court to "enjoin the defendants, their successors in office, agents and employees and all other persons acting in concert and participation with them, from further treating Plaintiff's severe and chronic pain symptoms, and all related underlying medical issues..." Plaintiff points out that staff from Corrections Medical Services ("CMS") provide the health care for inmates at MCF-Rush City and MCF-Oak Park Heights.  The Court will address the merits of Plaintiff's motion for preliminary injunction in the discussion below.

## II.    DISCUSSION

### A.    Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6) and (c) a party may move to dismiss a claim for failure to state a claim upon which relief may be granted.  If matters outside the pleadings are presented to and not excluded by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Fed. R. Civ. P. 12(b).  Plaintiff and Defendants have submitted affidavits and/or exhibits in support of their arguments. The Court will treat the present

motions as motions for summary judgment.

Summary Judgment is proper if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56; Celotex v. Catrett, 477 U.S. 317, 323 (1986). There is no genuine issue as to any material fact where a party fails to make a showing sufficient to establish an element essential to that party's case. Id. In considering a motion for summary judgment, the court must not weigh the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must accept the nonmoving parties allegations as true and must draw all justifiable inferences in favor of the nonmoving party. Id. A pro se pleading filed in response to a motion for summary judgment should be liberally construed, and held to the less stringent standard of whether it is beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520 (1972) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**B.**   **Motion for Summary Judgment by Defendants Skon, Ebeling, Larson, Feneis, Walker and Barger**

**1.**   **Exhaustion of Administrative Remedies**

Defendants Skon Ebeling, Larson, Feneis, Walker and Barger argue Plaintiff's claims regarding his psychiatric care must be dismissed because he failed to exhaust his administrative remedies on this issue by failing to attach required documentation to a grievance he attempted to file on January 20, 2007. (Affidavit of Kim Ebeling, Exhibit 3, ¶¶ 3-4.) The MN DOC grievance procedures require an inmate to file a formal grievance, and attach all kites used in the chain of command and the responses to the kites from staff that show an attempt at informal resolution. (Affidavit of Kim Ebeling, Exhibit 1). If the offender does not agree with the response to his formal grievance, he may appeal to the central

office grievance appeal coordinator within fifteen days.  Id.  The appeal form must be accompanied by one copy of the facility grievance and response.  Id.

Plaintiff contends he should be excused from exhausting administrative remedies on his January 20, 2007 grievance because prison officials refused to return his kites, which prevented him from completing the grievance procedure.  (Response to Defendants' Motion for Dismissal or Summary Judgment, p. 3, Docket No. 40).  Petitioner has provided copies of grievances indicating that he complained of prison officials not returning his kites.  (Complaint, Exhibits 10-15).

In Woodford v. Ngo, the United States Supreme Court noted that, "[a] centerpiece of the [Prison Litigation Reform Act's] effort 'to reduce the quantity...of prisoner suits' is an 'invigorated exhaustion provision, [42 U.S.C.] § 1997(e)(a)."  126 S.Ct. 2378, 2382 (2006) (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002)).  42 U.S.C. § 1997e(a) requires proper exhaustion, which demands compliance with an agency's critical procedural rules.  Id. at 2386.  The provision requires exhaustion of only those remedies which are available.  Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001).  A remedy that prison officials prevent an inmate from  obtaining is not an available remedy.  Id.  A prison official's failure to timely respond to a grievance could be a basis for the prisoner to show he exhausted all available administrative remedies.  Sergent v. Norris, 330 F.3d 1084, 1085 (8th Cir. 2003) (citing Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001)).

When the facts are viewed in the light most favorable to the plaintiff, a genuine issue of material facts exists as to whether Plaintiff exhausted all of the available administrative remedies with respect to his claims of deliberate indifference to his need for psychiatric treatment.  Exhibits submitted by Plaintiff show that he advised the grievance coordinators that he could not attach the required paperwork to his

grievance because it had not been returned to him. (Complaint, Exhibits 10-15).

### 2. Eleventh Amendment

Defendants Skon, Ebeling, Larson, Feneis, Walker and Barger argue Plaintiff's claims for damages against them in their official capacities are barred by the Eleventh Amendment and should be denied. "[I]n the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). This applies equally to actions for damages against state officials sued in their official capacities in federal court. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). However, Congress may pass legislation, pursuant to section 5 of the Fourteenth Amendment, to abrogate a State's Eleventh Amendment immunity. Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir. 1995); see also Will, 491 U.S. at 66 (finding Congress did not intend, by passing § 1983, to disturb the States' Eleventh Amendment immunity).

Plaintiff's complaint seeks damages against Defendants Skon, Ebeling, Larson, Feneis, Walker and Barger in their official and individual capacities. The Eleventh Amendment bars Plaintiff's claims for money damages against these defendants in their official capacities, and those claims should be dismissed. See Thomas v. Gunter, 32 F.3d 1258, 1261 (8th Cir. 1994). However, the allegations against these defendants for money damages in their individual capacities are not barred by the Eleventh Amendment. See Id. at 1261-62 (citing Scheuer v. Rhodes, 416 U.S. 232, 238 (1974)).

### 3. Claims for Injunctive Relief

Defendants Skon, Ebeling, Larson, Feneis, Walker and Barger contend Plaintiff's claims for injunctive relief for violation of his Eighth Amendment right to be free from cruel and unusual punishment

should be dismissed because he cannot show that they were deliberately indifferent to his back pain or his psychiatric needs. Defendants contend Plaintiff cannot make the required subjective showing that the prison officers' conduct demonstrated a culpable mindset of deliberate indifference. Plaintiff's claims regarding his back pain and his psychiatric needs will be addressed separately.

Plaintiff responded that he has offered sixty-two exhibits with his Complaint that should clearly show deliberate indifference of the defendants to his serious medical needs. (Plaintiff's Response to Defendants' Motion for Summary Judgment, p.1, ("Response") Docket No. 22, and see Docket No. 40). Plaintiff points to the statement of Defendant Darin Haugland (Complaint, Exhibit 53) that Plaintiff voiced his complaints of severe and chronic pain in every way possible, and went through the proper channels seeking some sort of intervention. (Response, p.1). Plaintiff states when the intervention was finally approved, in the shape of an outside consult with orthopedic surgeon Dr. Dykes, Dr. Dykes' recommendation for Plaintiff to see a chronic pain specialist was denied, and Dr. Lucas was put in charge of managing his pain. Id., p.2 (citing Complaint, Exhibit 59).

Deliberate indifference to a prisoner's serious medical needs constitutes unnecessary and wanton infliction of pain, which is proscribed by the Eighth Amendment, and is applied to the States through the Fourteenth Amendment. Estelle v. Gamble, 429 U.S. 97, 101-04 (1976). The indifference can be manifested by prison doctors' responses to a plaintiff's serious medical needs or by prison officers who intentionally deny or delay access to medical care, or interfere with treatment, once prescribed. Id. at 104-05.

To establish an Eighth Amendment claim, Plaintiff must demonstrate that he suffered from objectively serious medical needs, and that the prison officials actually knew of but deliberately

disregarded an excessive risk to the inmate's health. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997); Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). A serious medical need is one diagnosed by a physician as requiring treatment or one that is so obvious that even a layperson would recognize the necessity of a doctor's attention. Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). In order to establish the objective element of the claim that delay in providing medical treatment violated the Eighth Amendment, the plaintiff must provide verifying medical evidence as to the detrimental effect of the delay. Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997).

The second element a plaintiff must establish to state an Eighth Amendment claim is that the defendant knew of but deliberately disregarded a serious medical need. Dulany, 132 F.3d at 1239. Negligence in diagnosis or treatment of an illness or injury does not rise to the level of an Eighth Amendment violation. Estelle, 429 U.S. at 106. The United States Supreme Court has adopted the subjective recklessness standard as used in the criminal law as the test for deliberate indifference under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 839-40 (1994). This standard requires conduct more egregious than gross negligence. Jolly v. Knudson, 205 F.3d 1094, 1096 (8th Cir. 2000).

Inmates are not entitled to a particular requested treatment, and prison doctors are free to exercise their independent judgment. Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997); Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). A physician's failure to prescribe an alternate treatment for a condition, which may or may not be effective, is not sufficient to raise an inference of deliberate indifference, if prison officials acted reasonably but were unsuccessful in treating the condition. Dulany, 132 F.3d at 1241.

The record indicates that Plaintiff has a serious medical need requiring treatment for chronic pain. The Affidavit of David A. Paulsen, M.D., ("Paulsen Aff.") the medical director for the MN DOC, indicates that Plaintiff suffers from spinal stenosis and multi-level disc disease that causes chronic neuropathic pain and numbness in the back and legs. (Paulsen Aff., ¶ 7, and Ex. B.) Dr. Paulsen noted that Plaintiff's complaints of pain began to increase in 2005 and 2006. Id., ¶ 8.

Defendants argue, however, that Plaintiff has not established that he has an acute or escalating condition such that delay in treatment is dangerous or will cause deterioration in his condition. In his affidavit, Dr. Paulsen explains that Plaintiff was sent to a neurosurgeon for consultation on January 17, 2007. (Paulsen Aff., ¶ 13). The neurosurgeon, Dr. Dykes, states there is nothing dangerous in Plaintiff's x-rays, and the only surgical option would be an anterior posterior spinal fusion L3 to sacrum. Id. Dr. Dykes indicated that the risks associated with the surgery were continued or worsened pain, infection, and damage to nerves which could cause paralysis. Id. He also noted it is common for patients not to find relief of back pain after this surgery. Id. Dr. Dykes recommended that Plaintiff be seen by a chronic pain specialist. Id.

Plaintiff has not offered verifying medical evidence as to the detrimental effect of the delay in providing him an outside consultation with a neurosurgeon, or surgery. In fact, the result of his consultation with the neurosurgeon was that surgery was deferred until Plaintiff tried to manage the pain by referral to a chronic pain specialist. (Paulsen, Aff., ¶ 13, and Complaint, Exhibit 51). Therefore, he has not established a claim that delay in providing the specific treatment he sought violates his rights under the Eighth Amendment. See Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006) (failure to provide medical evidence of detrimental effect of delay).

The Court will consider whether Plaintiff has established deliberate indifference, as to each defendant, based on intentional denial of treatment or interference with prescribed treatment. As described above, Plaintiff alleges Defendant Skon was notified around March 2006 that Plaintiff was in severe pain and was not receiving proper medical treatment. He alleges Defendant Skon was deliberately indifferent to his serious medical needs by having the same staff about whom Plaintiff complained respond to Plaintiff's needs.

Plaintiff has submitted the Declaration of Rachel Dahlin, which states she is Plaintiff's wife and has written letters of concern to officials at Rush City and the DOC Central Office regarding treatment for her husband's severe pain. (Declaration of Rachel Dahlin, Attachment to Complaint). Plaintiff has provided copies of the responses to his wife's letters. (Attachments to Declaration of Rachel Dahlin). On April 18, 2006, John Agrimson, the Director of Nursing at MN DOC's Central Office, wrote to Ms. Dahlin to respond to her letter that was addressed to Erik Skon. Mr. Agrimson wrote:

> I have discussed your concerns with Denise Barger, Health Services Administrator at Rush City. Denise informed me that she recently responded to a letter you wrote to Warden Feneis on March 14, 2006. I reviewed the letter and noted it to be the same letter that you sent to Mr. Skon. Denise informed me that she has discussed these concerns with your husband and that he is in agreement with the medical care he is receiving.
>
> Further, I reviewed Mr. Dahlin's medical record and noted he continues to see the medical provider on a regular basis. He is receiving pain medications and is being monitored closely. He received his TENS unit and has been authorized to use it as needed.

(Attachment to Declaration of Rachel Dahlin). The letter demonstrates that Skon referred the complaint for an investigation, and the investigation indicated that Plaintiff was being monitored and

provided treatment on a regular basis. This evidence does not support Plaintiff's contention that Defendant Erik Skon intentionally denied Plaintiff treatment or interfered with prescribed treatment.

Furthermore, it is well settled that respondeat superior is not a basis for liability under section 1983. Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997). Skon does not have medical expertise and cannot be liable for the medical staff's diagnostic decisions. See Id. Under the circumstances, Plaintiff's claim must be directed at the individuals directly responsible for his medical care. Id. (citing Kulow v. Nix, 28 F.3d 855, 859 (8th Cir. 1994)).

In support of his claim that Defendant Kim Ebeling, the Grievance Appeal Coordinator at the MN DOC Central Office, was deliberately indifferent to his serious medical needs, Plaintiff offers the grievance appeals he submitted to Ebeling on July 21, 2006 and February 17, 2007, and her responses thereto.[3] (Complaint, Exhibits 5, 7, 8, 9, 12, 15, 16).

On July 24, 2006, Ms. Ebeling notified Plaintiff that his grievance was being investigated. (Complaint, Exhibit 5). In his grievance, Plaintiff complained that although Dr. Lucas requested on off-site surgery consultation for Plaintiff, Dr. Lucas' request was denied. (Complaint, Exhibit 1). Plaintiff asserted that only surgery could relieve his pain. Id. On August 14, 2006, Ms. Ebeling notified Plaintiff that the investigation was complete and his appeal was denied. (Complaint, Exhibit 7).

The Appeal Response, signed by Nanette Larson, Appeal Response Person, states:

> You have appealed past deferrals of surgery for your orthopedic condition. While you suggest that the deferrals constitute neglect, I consider them to be part of the due diligence necessary to attempt all conservative therapies prior to approval of more risky surgical

---

[3] Plaintiff's grievance of February 17, 2007 will be discussed below in the context of Plaintiff's claim that defendants were deliberately indifferent to his psychiatric needs.

interventions.

...

It is my understanding that the committee approved a consultation with a back specialist, pending receipt of a report by CMS physical therapist and MRI results from December 2005. The committee is expected to support the recommendations of the back specialist, including any recommendations for surgical intervention.

(Complaint, Exhibit 9).

The evidence offered in support of Plaintiff's claim against Defendant Ebeling does not indicate that she was deliberately indifferent to his medical needs. She caused an investigation of his claims, and the investigation revealed that the medical staff considered that the surgery Plaintiff wanted was risky, and Plaintiff was offered conservative therapies before resorting to surgery. Plaintiff's claim against Defendant Ebeling should be dismissed.

Plaintiff's claim against Defendant Nanette Larson, an Appeal Response Person, is that she did not follow up with his situation after she indicated in her appeal response that he was conditionally approved for a consultation with a back specialist. Ms. Larson was not a medical provider. She was not obligated to monitor Plaintiff's treatment after she responded to his grievance. In any event, the evidence indicates that Plaintiff was referred to an outside specialist, as Ms. Larson suggested, but the specialist indicated that surgery imposed risks, may not be effective, and an attempt should be made to provide treatment from a chronic pain specialist before resorting to surgery. (Complaint, Exhibit 51). Plaintiff's claim against Defendant Larson should be dismissed.

Plaintiff alleges Defendant Feneis, the warden of MCF-Rush City, was deliberately indifferent to his severe pain because in response to Plaintiff's grievance of May 16, 2006, he referred Plaintiff to the Health Services Administrator to provide information on how to appeal a medical decision, but the

Health Service Administrator was one of the people denying him treatment. Nonetheless, Plaintiff filed

a grievance, and on June 23, 2006, Defendant Feneis noted that Dr. Lucas requested a surgical

consultation, but the request was denied. (Complaint, Exhibit 6). Plaintiff alleges he did not receive the

dismissal of his grievance from Defendant Feneis until July 14, 2006, nearly two months after his initial

complaint to the Warden. Plaintiff alleges this delay in responding to his concerns indicates that

Defendant Feneis was deliberately indifferent to his serious medical needs. As the Court noted above,

to state a claim for violation of the Eighth Amendment caused by delay in medical care, the Plaintiff

must provide verifying medical evidence as to the detrimental effect of the delay. Plaintiff has not done

so.

Plaintiff alleges Beth Walker, the Grievance Coordinator at MCF-Rush City,

blocked his attempts to access the inmate grievance process by not filing his grievance of May 12,

2006 until June 20, 2006, although his grievance described his severe pain.

Plaintiff submitted a "Receipt of Offender Grievance" dated June 20, 2006, and signed by Beth

Walker. (Complaint, Exhibit 2). The letter states:

> Please be advised that your grievance regarding medical attention was
> received and has been assigned to an investigator. Your grievance
> number is 2891. A final decision will be made by the warden or his
> designee.

(Complaint, Exhibit 2).

According to the MN DOC Grievance Procedure, the grievance coordinator must send the

offender written notice of the date the grievance was logged into the grievance database. (Affidavit of

Kim Ebeling, Ex. 1). The procedures do not require the grievance coordinator to do this within any

particular timeframe, but logging the grievance starts the twenty-day clock for the Grievance

Coordinator to inform the offender of the Warden's decision on the grievance. Id. Although Ms.

Walker's failure to log the grievance sooner may suggest negligence in performance of her duties, there

isn't any evidence to suggest she deliberately blocked Plaintiff's access to the grievance process.

The response to Plaintiff's grievance was slow, but the delay in getting a neurosurgical

consultation did not cause Plaintiff's spinal stenosis to worsen. Not only did the neurosurgeon defer

surgery, he explained that it was possible the alternative treatments offered by a chronic pain specialist

might not be effective. (Complaint, Exhibit 51). In other words, although they could try to manage

Plaintiff's pain, there were no guarantees the treatment would be successful, and Plaintiff might continue

to suffer pain.

Denise Barger is the Health Services Supervisor at MCF-Rush City. Plaintiff alleges she was

deliberately indifferent to his severe medical needs because she failed to provide him with effective

treatment for pain when he asked for help in dozens of kites between April 13, 2006 and January 3,

2007.

Plaintiff attached copies of a number of kites he wrote to Denise Barger to the Complaint. The

following are some examples of those kites. On May 3, 2006, Plaintiff wrote that his pain medication,

Ultram[4], runs out the next day and needed to be reordered, and he needed a cell with a power outlet to

recharge his TENS unit. (Complaint, Exhibit 20). Ms. Barger responded that sick call was available to

reassess his need for a cell for a power outlet. Id.

---

[4] Ultram is a centrally acting synthetic opioid analgesic. Physician's Desk Reference 2367 (62nd ed. 2008, Thomson 2007). Ultram is indicated for moderate to moderately severe chronic pain. Id. at 2368.

On May 12, 2006, Plaintiff wrote a kite to Health Services stating that he was not being treated, he had written kites which were not returned, and he was being weened off the only pain medication that gives him any relief.  (Complaint, Exhibit 21).  He said he could not sleep, could not eat, and was losing function of his legs and bladder.  Id.  He stated that if he was free he would call 911.  Id.  Ms. Barger responded that Plaintiff was seen on May 16, 2006, and Elavil[5] was ordered to treat his chronic pain.  Id.

Plaintiff wrote a kite on May 16, 2006, after he saw Dr. Lucas, and complained that Dr. Lucas' request for an outside neurosurgeon consultation was denied, and all Dr. Lucas could do was increase his Elavil.  (Complaint, Exhibit 24).  Plaintiff complained that Elavil and the TENS unit did not help his pain.  Id.  Ms. Barger wrote back that Elavil is a "very good med" for chronic pain.  Id.  She also stated she would talk to Dr. Lucas about resubmitting the request for an off-site appointment.  Id.

On May 17, Plaintiff wrote another kite stating that he was already on the maximum dosage of Elavil, and he had been on it a year ago, and it didn't work.  (Complaint, Exhibit 25). He said that Dr. Lucas told him to exercise, but he didn't know what exercises to do.  Id.  Ms. Barger wrote that Dr. Lucas put in another request for an off-site visit, and she would check to see if Plaintiff was on the physical therapy list.  Id.

On May 24, Plaintiff complained that his Ultram was cut in half, and it was the only drug that gave him any relief.  (Complaint, Exhibit 27).  Ms. Barger wrote back that Ultram had been reordered.

---

[5]  Elavil is a trademark for amitriptyline hydrochloride.  Miller-Keane Encyclopedia & Dictionary of Medicine, Nursing, & Allied Health567 (7th ed., Elsevier Science (USA) 2003). Amitriptyline is a trycyclic antidepressant with sedative effects; also used in treating chronic pain.  Id. at 78.

Id.  In response to a kite in August, Ms. Barger told Plaintiff Dr. Lucas increased his Ultram from one tablet to two tablets, and his "neuro-consult" was approved.  (Complaint, Exhibit 34).

Ms. Barger's responses to Plaintiff's kites do not indicate deliberate indifference to his pain and suffering.  She took steps to coordinate efforts for his care.  Plaintiff's claims against Defendant Denise Barger should be dismissed.

The next issue is whether Defendants Walker and Ebeling were deliberately indifferent to Plaintiff's psychiatric needs.  First, Plaintiff must establish that he had a serious psychiatric need, one diagnosed by a physician as requiring treatment or one that is so obvious that even a layperson would recognize the necessity of a doctor's attention.  In order to establish a claim that delay in providing treatment violated the Eighth Amendment, Plaintiff must provide verifying medical evidence as to the detrimental effect of the delay.

Plaintiff alleges he filed a grievance with Beth Walker on January 20, 2007 because Dr. Lucas ordered him to see a psychiatrist, but for several months noone would respond to his kites requesting an appointment with a psychiatrist.  He explained that his claims were related to his constant pain, and Dr. Lucas felt the related insomnia was a psychological issue.   Ms. Walker returned this grievance because Plaintiff did not attach the kites showing his attempt at informal resolution of the issue.  (Complaint, Exhibit 11).  Plaintiff wrote another grievance explaining he could not attach any kites because they were not being returned to him.  (Complaint, Exhibits 12, 13).

Plaintiff filed a grievance appeal to Defendant Ebeling regarding his severe depression and insomnia.  He informed her that he was seeking help for two months, but his kites were being ignored.  (Complaint, Exhibit 10).  Plaintiff alleges Defendant Ebeling was deliberately indifferent to his needs

because she returned his appeal for failing to attach copies of a formal grievance response. (Complaint, Exhibit 15).

The medical record indicates that Dr. Lucas did in fact refer Plaintiff to a psychiatrist for treatment of insomnia. (Complaint, Exhibit 40). Therefore, Plaintiff established that a physician diagnosed a condition for which treatment was required. This satisfies the objective component of an Eighth Amendment claim.

Plaintiff claims that Defendants Walker and Ebeling caused delay in his treatment for insomnia, which was related to his chronic pain. In order to state an Eighth Amendment claim based on delay of treatment, Plaintiff must provide verifying medical evidence as to the detrimental effect of the delay. Plaintiff has not done so. There is no evidence in the record that delay in treatment of Plaintiff's insomnia caused his health to deteriorate.

### 4. Qualified Immunity

Defendants Skon, Ebeling, Larson, Feneis, Walker and Barger argue Plaintiff's claims for money damages against them in their individual capacities should be dismissed because they are entitled to qualified immunity, and Plaintiff cannot recover compensatory damages for emotional suffering. If these defendants are entitled to qualified immunity, the issue of compensatory damages is moot.

Government officials are entitled to qualified immunity when performing discretionary functions, unless they violate clearly established law. Beck v. Wilson, 377 F.3d 884, 889 (8th Cir. 2004). Qualified immunity is an affirmative defense. Id. "The first inquiry must be whether a constitutional right would have been violated on the facts alleged." Saucier v. Katz, 533 U.S. 194, 200 (2001). The second inquiry is only necessary if a constitutional violation is established, and requires the court to

consider whether the right was clearly established.  Id.

Defendants Skon, Ebeling, Larson, Feneis, Walker and Barger are government officials performing discretionary functions in their dealings with Plaintiff.   The Court has analyzed Plaintiff's claims of violation of his Eighth Amendment rights by Defendants Skon, Ebeling, Larson, Feneis, Walker and Barger and found that Plaintiff has failed to establish the subjective elements of his claims as to each defendant or that delay in treatment caused his condition to deteriorate.

> If the court finds no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed....This is not to say, however, the defendant official is entitled to qualified immunity.  Rather, if no constitutional violation occurred, plaintiff's claim fails as a matter of law because plaintiff did not prove an essential element of the § 1983 claim.

Ambrose v. Young, 474 F.3d 1070, 1077 n. 3. (8th Cir. 2007) (citations omitted).

In summary, Plaintiff is not entitled to injunctive relief or damages against Defendants Skon, Ebeling, Larson, Feneis, Walker and Barger because he did not prove an essential element of his Eighth Amendment claims against these defendants.

### C.    Motion for Summary Judgment by Defendants Krueger and Lucas

#### 1.    Timeliness of Motion

Plaintiff alleges the Motion to Dismiss or for Summary Judgment of Defendants Krueger and Lucas is untimely pursuant to the Court's order of October 5, 2007.  (Plaintiff's Memorandum, Docket No. 52).  Defendants Krueger and Lucas reply that their motion is timely pursuant to the Court's

pretrial scheduling order dated July 19, 2007, which sets a deadline of February 1, 2008 for dispositive motions. (Reply Memorandum of Defendants Krueger and Lucas, Docket No. 56). The pretrial scheduling order sets forth the deadlines for dispositive motions in this matter, and Defendants Krueger and Lucas' motion was timely filed on January 17, 2008.

### 2. Dr. Krueger

As noted above, Plaintiff alleges Defendant Dr. Krueger first examined him for back pain and leg spasms while Plaintiff was incarcerated at MCF-St. Cloud on December 21, 2005, but Dr. Krueger did nothing to help him. Plaintiff alleges that he told Dr. Krueger on January 13, 2006 that he was in constant pain, and Dr. Krueger's response was to review his medical records and see him again in a couple of weeks. Plaintiff alleges when he saw Dr. Krueger again on February 10, 2006 for severe back pain and leg spasms, Dr. Krueger's response was to continue Plaintiff's same medication and to review Plaintiff's case in a couple of weeks. Plaintiff alleges Dr. Krueger was deliberately indifferent to his serious medical needs and his conduct violated Plaintiff's rights under the Eighth Amendment.

Defendant Krueger contends he was not deliberately indifferent to Plaintiff's serious medical needs. He asserts that when he first treated Plaintiff, he reviewed his medical records, studied his MRI findings, and wrote a new prescription for Ultram, which helped alleviate Plaintiff's pain. (Complaint, ¶ 8 and Exhibit 39). Dr. Krueger advised Plaintiff to follow up after he reviews his complete records. Id.

On the next visit, Dr. Krueger learned the pain medication gave Plaintiff some relief. Id. He advised Plaintiff to continue with Ultram and follow-up in a few weeks. Id. Dr. Krueger's professional opinion was that Plaintiff's back condition was stable and the pain associated with a chronic condition was adequately controlled with Ultram. (Affidavit of Keith Krueger, M.D., ¶ 10).

Dr. Krueger contends there is no objective medical evidence that he knew or should have known of some other treatment Plaintiff needed. He alleges Plaintiff's claim represents only Plaintiff's disagreement with his medical judgment, which does not rise to the level of deliberate indifference. Furthermore, he alleges there is no evidence to establish that any lack of treatment, beyond the medication prescribed, caused Plaintiff any harm.

In <u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1976), the Supreme Court held that a prison doctor's failure to do more than diagnose Plaintiff with low back strain, and treat it with bed rest, pain relievers, and muscle relaxants did not rise to the level of deliberate indifference even where Plaintiff continued to complain of severe pain. For the same reasons, Dr. Krueger was not deliberately indifferent to Plaintiff's needs where he prescribed Ultram to treat Plaintiff's chronic pain. Although Ultram did not provide Plaintiff complete relief, Plaintiff himself said it was the only medication that ever gave him any relief. (Complaint, Exhibit 27.) It does not violate the Eighth Amendment for a prison doctor to deny an inmate's suggested course of treatment. <u>See</u> <u>Bellecourt v. United States</u>, 994 F.2d 427, 431 (8th Cir. 1993) (finding no eighth amendment violation where doctor misdiagnosed chest pains as ingestion, and inmate later suffered a heart attack). Plaintiff's claims against Dr. Krueger should be dismissed.

### 3. <u>Dr. Lucas</u>

Plaintiff alleges Dr. Lucas, his treating physician at MCF-Rush City, continuously ignored his complaints of severe and constant pain, occasional loss of bladder control, insomnia, numbness, and inability to perform routine daily activities. He alleges Dr. Lucas repeatedly prescribed medications and treatment that were ineffective and that Dr. Lucas' conduct violated his rights under the Eighth Amendment.

23

Dr. Lucas alleges that even if Plaintiff's complaints that he failed to provide him with effective treatment are true, they do not rise to a level of a constitutional violation. Dr. Lucas' professional medical opinion was that Plaintiff's underlying back condition was stable, and there was never a need for specific treatment for spinal stenosis, but that his pain was chronic and unlikely to ever be relieved entirely. (Affidavit of Purisimo Lucas, M.D., ¶ 24). Dr. Lucas states he evaluated Plaintiff each time Plaintiff requested to be seen, and attempted a variety of ways to medically manage the pain. Id., ¶ 23. He further contends that Plaintiff's condition was never critical or escalating, and the treatment provided (and the denial of alternative treatments) did not jeopardize Plaintiff's health in any way.

Plaintiff replied to the Affidavit of Dr. Lucas and contests many of Dr. Lucas' statements. Summary judgment is inappropriate where material facts are in dispute, unless, taking the Plaintiff's allegations as true, he has failed to establish an element of the claim. Therefore, the Court will consider whether the facts alleged in the Complaint, accepted as true, establish that Dr. Lucas was deliberately indifferent to Plaintiff's pain.

Plaintiff contends the exhibits he attached to the Compliant are evidence of deliberate indifference to his serious medical needs. Dr. Lucas' treatment record of February 21, 2006 indicates that Plaintiff had been seen in the clinic several times for chronic back pain, and at the last consultation, he was given Ultram. (Complaint, Exhibit 40). Plaintiff wanted a consultation with a neurosurgeon to determine whether he needed surgery. Id. He also wanted medication to help him sleep. Id. Dr. Lucas prescribed Seroquel for insomnia, and agreed to consult with Dr. Krueger about the possibility of a neurosurgical consultation. Id.

In a treatment note on March 16, 2006, Dr. Lucas noted that Plaintiff said Ultram only helps

briefly, therefore, use of a TENS unit may be helpful.  (Complaint, Exhibit 40).  He recommended: 1) use of the TENS unit; 2) continuing Ultram; 3) see a psychiatrist for insomnia; and 4) an orthopedic or neurosurgical consultation.  Id.

In a treatment note on March 27, 2006, Dr. Lucas noted Plaintiff was still having insomnia and chronic pain.  (Complaint, Exhibit 41).  Plaintiff was now on Elavil, and although the pain was unbearable, Dr. Lucas noted that Plaintiff agreed to take Elavil at bedtime for three months.  Id.  Dr. Lucas recommended that Plaintiff continue on Ultram, the TENS unit, and Elavil.  Id.  He was still waiting for approval of the neurosurgical consult.  Id.

On May 16, 2006, Dr. Lucas reviewed Plaintiff's most recent MRI from several years ago, which showed congenital spinal stenosis.  (Complaint, Exhibit 42).  Because Plaintiff was walking by himself, and "very functional," Dr. Lucas wanted to decrease the Ultram slowly.  Id.  He did not see the need for an immediate orthopedic or neurosurgical consultation, and he prescribed Ibuprofen and physical therapy.  Id.

Two days later, Dr. Lucas saw Plaintiff again for complaints of pain.  Id.  He observed that Plaintiff appeared functional, but exaggerates symptoms when asked about pain.  Id.  Nonetheless, he wrote another request for an outside consultation for Plaintiff.  Id.

On June 1, 2006, Dr. Lucas performed a neurological examination because it was required before the off-site consultation request would be approved.  (Complaint, Exhibit 43). Plaintiff reported that he gave up Ultram because it wasn't working anymore.  Id.  On June 12, Dr. Lucas performed other neurological tests and prescribed 100mg of Thiamine.  (Complaint, Exhibit 44).  On June 19, he filled out a Chronic Pain Committee Referral Form for Plaintiff to be referred for on site treatment for

chronic pain.  Id.  He stated "[h]e will continue his other medications."  Id.  On June 27, he noted he

has seen Plaintiff many times, Plaintiff was on Ultram, and he had referred Plaintiff for an orthopedic

consultation.  (Complaint, Exhibit 45).  In July, he prescribed Prednisone to see if it would help with his

chronic pain.  (Complaint, Exhibit 45).

On August 16, Dr. Lucas noted the surgical consultation was approved, and he prescribed

Baclofen and increased the dosage of Ultram because Prednisone was ineffective.  (Complaint, Exhibit

46).  On January 23, 2007, Dr. Lucas noted the surgical consultation was performed, and Dr. Dykes

did not recommend surgery at that time.  (Complaint, Exhibit 48).  Additional medical records indicate

Dr. Lucas continued to see Plaintiff for chronic pain, and prescribed different medications when Plaintiff

complained of not getting relief.  (Complaint, Exhibit 49).

The medical records support Plaintiff's complaint that Dr. Lucas continued to provide him with

treatment that was not effective in controlling his chronic pain.  However, the medical records do not

indicate that Dr. Lucas was deliberately indifferent to Plaintiff's serious medical needs.  He did not

refuse to treat Plaintiff.  He tried a number of different medications, and kept trying when any drug

proved ineffective.  He advocated for and ultimately was successful in getting Plaintiff an outside

surgical consultation.  Although Plaintiff believed surgery would help him, it was not recommended at

the time of the surgical consultation.  While it is true that Plaintiff may have been able to choose

alternative treatments if he were free, the Eighth Amendment does not require that he be afforded the

same care he could receive outside prison.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.

1990) (Eighth Amendment does not require treatment as prompt or efficient as a free citizen might

receive).  Dr. Lucas did not violate the Eighth Amendment by not providing Plaintiff with effective

treatment.  See Summage v. McEvers, 968 F.2d 1218, 1992 WL 150300, at *2 (7th Cir., June 30, 1992) (finding no violation of Eighth Amendment where prison staff provided ineffective pain treatment for months before resorting to surgery for herniated disc); Shofner v. Commacho, 230 F.3d 1359, 2000 WL 1359633, at *2 (6th Cir. Sept. 14, 2000) (allegation of failure to provide back surgery for inmate's degenerative disk disease and spinal stenosis did not establish an Eighth Amendment violation where prison treated plaintiff with various medications and physical therapy).

### D.  **Preliminary Injunctive Relief**

Plaintiff seeks preliminary injunctive relief for defendants to provide Plaintiff with "effective pain medication and sleep medication."  (Motion for Preliminary Injunction, Docket No. 15.)  An inmate must state a prima facie case of an Eighth Amendment violation to obtain a preliminary injunction. Larson v. Kempker, 414 F.3d 936, 940 (8th Cir. 2005).  In determining whether to grant a preliminary injunction, a court considers several factors, including the probability that the movant will succeed on the merits.  Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981).  This Court has recommended that all claims against Defendants Skon, Ebeling, Larson, Feneis, Walker, Barger, Krueger and Lucas be dismissed because Plaintiff failed to establish an essential element of his Eighth Amendment claims.  Therefore, there is little probability Plaintiff will succeed on the merits, and his motion for preliminary injunction should be denied.

## III.  **RECOMMENDATION**

For the foregoing reasons, it is hereby recommended that:

1.  Plaintiff's Motion for Preliminary Injunction be denied [Docket No. 15];

2.  Defendants Skon, Ebeling, Larson, Feneis, Walker, and Barger's Motion for Summary

Judgment [Docket No. 31] be granted;

3.      Defendants Krueger and Lucas' Motion for Summary Judgment [Docket No. 44] be granted;

4.      The claims against Defendants Skon, Ebeling, Larson, Feneis, Walker, Barger, Krueger and Lucas be dismissed with prejudice.


Dated  February 22, 2008                 s/ Arthur J. Boylan
                                         Arthur J. Boylan
                                         United States Magistrate Judge


        Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before March 7, 2008.